CENTRAL TRUST CO. v. TEXAS & ST. L. RY. CO., CAMDEN LUMBER CO., and others, Intervenors.[1]

*(Circuit Court, E. D. Missouri.   April 29, 1885.)*

1. LIENS FOR RAILWAY SUPPLIES—OPEN ACCOUNT.

   Under the Missouri statutes a material-man is entitled to a lien for the whole amount due him for materials furnished a railroad under an open and current account, if the last item of the account accrued subsequently to the time within which a lien could be filed.

2. SAME—EQUITABLE LIENS—MORTGAGES.

   Where a material-man is entitled to a statutory lien against a railroad in the hands of a receiver, this court will treat his claim as if all necessary steps had been taken under the statute, and will allow him an equitable lien prior in right to that of mortgage creditors.

Exceptions to Master's Report.

The intervenors' claim in this case is for lumber furnished from time to time, between August 20, 1883, and December 3, 1883.   Default in the payment of interest took place September 1, 1883, and a receiver was appointed January 12, 1884.

*L. P. Nolan*, for intervenors.

*Butler, Hubbard & Stillman, Phillip & Stewart,* and *Eleneious Smith,* for complainant.

*Wells H. Blodgett* and *Eleneious Smith,* for receiver.

BREWER, J., *(orally.)*   In the intervening petitions in the Texas & St. Louis Railway Company, which have been held by us for some time because of the decision of the supreme court of this state as to the construction of the lien law, the conclusion to which we have come is that the master has rightly interpreted that lien law, and that his exposition of the order heretofore made by this court, in reference to subsisting contracts, is also correct.   Were it not for the fact that the materials furnished went into the permanent structure of the road, and for which a lien could be obtained, we think that the claims would have to be disallowed as far as the items of account furnished prior to the first of September are concerned.   But there was an "open, running account," as the supreme court construe that term. Indeed, in reference to one of these cases, the parties agreed that there was an open, running account; and while the essential facts, as narrated by the master, do not seem to me to fully bring it within the description of an "open, running account," yet there is an express stipulation of the parties.   The other case presents substantially the same facts; and if there was an open, running account, the last items of which accrued subsequently to the time within which a lien could be filed, the whole account should be sustained as a prior claim; for, as was stated very early in the proceedings in this case and formulated in an order, where parties are entitled to a lien, and can secure

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar

it by certain proceedings under the statutes of the state, they are not required to go to the expense of such proceedings, but this court will treat it as though all needful steps had been taken to establish the lien. In both these cases—one by express stipulation, and the other by a fair construction of the entire testimony—there were open, running accounts for material which passed into the permanent structure of the road. We think the parties were entitled to a lien, and therefore their entire claims should be allowed, and the exceptions to the report of the master will be overruled.

In reference to the particular order discussed by counsel, my brother TREAT has prepared an exposition which may help to a right understanding in future proceedings in this and other cases, which I will read:

"The various rulings of the court with respect to betterments and wages, not within the respective times stated,—to-wit, six months or otherwise,—have rested upon this distinct proposition: That supplies furnished or services performed under a *subsisting* contract, to which and to the continuance of which the parties were respectively bound, and the termination of said contract did not happen except within the time limited; or when such a continuing contract was still in force at the appointment of a receiver, the items of such continuing and subsisting contracts would fall within the prescribed rules. No other demands, independent in their nature, incurred before the prescribed time, are to be treated other than as credits at large. If this ruling is enforced there need be no difficulty with respect to what are called 'open and current' accounts. Such accounts must be under subsisting contracts, not to be terminated until within the period of time named; otherwise all items previous to that time must be rejected. This ruling may be subject to an exception where the local statute gives a lien under a different limitation. In the latter cases difficulties may arise if local decisions are followed, each one of which must depend on its special facts.'

That is, in order that there shall be a subsisting contract, it must be one binding on the vendor as well as upon the railroad. A mere open, running account does not necessarily come within the purview of that. In dealing with a grocery merchant, for instance, you order separately from day to day, and while, by implied understanding or express agreement, there may be an open, running account, yet it is an account terminable at the option of either party at any time. The purchaser may say he will make no further purchases. The merchant may decline to make further sales. It is not, therefore, a subsisting contract. There must be a contract by which the vendor is under obligation to furnish for a definite time; as for instance, if the vendor had contracted to furnish for a period of six months, so much lumber each month at a certain rate, there is a contract which during the six months is binding upon him as well as binding upon the road. It is a subsisting contract enforceable as against both parties. But where there is simply an open, running account, terminable at the instance of either party, at any time, it is not within the scope of the order. We think the master fairly interpreted it, and we sustain his construction.